Judge Joe Fladd, Judge Pryor, and I want to welcome you to the third day of our session here in Atlanta. We're glad to be back. We are going to take a break after our third case because we have an attorney who is appearing remotely in the fourth case, and we have to make sure we've got all of the technology set up. So, we'll be taking a break between case number three and case number four. A word about masks, just in case anybody is unaware. If you're fully vaccinated, you don't need to wear a mask. If you are not fully vaccinated, you need to. And if you feel more comfortable wearing a mask, you are free to do so. So those are the guidelines we're using for this building. And so, we ask you to just keep in compliance with them. You know our procedure with the clock. When your time is drawing to a close, you'll see the yellow light, so just start to wrap up. If we take you beyond the red light, don't worry about that. You're on our time and not yours. And with that, we are ready to begin. And our first case is number 20-10790, the Federal Trade Commission versus Burton Katz et al. Mr. Schwartz. So I have one question for you that I'd like you to address at some point during your time. And as given everything that has happened procedurally since the District Court issued its injunction, I'd like to know from you, what do you think is still left for us to rule on? Absolutely, Your Honor, and good morning and may it please the Court. Let me first say how happy I am to be here for the first time in almost a year and a half in an actual physical courtroom. And a lot has happened over the last year and a half. It was about the same time that we were first hearing the words coronavirus in December of 2019 that the Federal Trade Commission asked for and the District Court granted an order that froze all of the assets without differentiation of approximately 60 defendants, I believe five individuals and the rest corporate entities comprising two distinct ventures. Dozens of people were laid off almost overnight. And for the last year and a half, these entities have been operating under receivership with the exception of a few that have been released. And the individuals have been subject to this blanket asset freeze that allows for no exceptions, even for living expenses or for legal fees. Now, since day one of this case, the appellants have been arguing that the Federal Trade Commission lacked the statutory authority to seek the relief that it asked for in the District Court granted because Section 13B of the Federal Trade Commission Act does not authorize any monetary relief whatsoever. It only permits injunctive relief. In April of this year, in AMG Capital Management, the Supreme Court of the United States agreed unambiguously, and it is now common ground between my friends and I, that the Federal Trade Commission has absolutely no authority to seek monetary penalties of any kind under Section 13B of the Federal Trade Commission Act, which is the only section that they relied on in this case to seek the monetary relief. It is also, I believe, common ground between my friends and I that the aspects of the order on appeal that imposed the asset freeze and imposed the receivership on the corporate entities rely upon the existence of monetary relief. The FTC has certainly explicitly conceded the first points, including when it wrote to this panel and said that the asset freeze is off the table in light of AMG Capital Management, and I submit to you that under this Court's precedent, receivership is also only available in instances where a plaintiff is asserting an equitable monetary interest in the asset subject to receivership, and there's plenty of authority for that. I think the leading case in this Court is Judge Schoflat's opinion in a case called P.M. Bino v. Bailey at 757 F. 2nd, 1112 at 1131 and note 46, I believe. Mr. Schwartz, my understanding is that you've moved in the district court to lift the receivership. What is the status of that argument here? So my clients did not. My clients, the day after AMG was decided, moved to vacate that asset freeze as to the individuals, and we did that because we didn't want to confuse any of the sort of difficult issues. We thought it was very straightforward in light of AMG that the asset freeze had to be lifted. We filed that literally the day after AMG was decided, and in the alternative, we asked for a stay pending appeal of that aspect of the district court's opinion. The FTC, while not disagreeing that we were entitled to that substantive relief, opposed, largely making jurisdictional arguments, arguing that because this appeal is pending, the district court was divested of jurisdiction to alter the injunction or even to stay the injunction, notwithstanding the plain text of the Federal Rules of Appellate Procedure that would have required us to go to the district court in the first instance. The district court has not acted on that motion. It's fully submitted. It is substantially unopposed, but it's been pending since April. After certain of the appellants dismissed their appeal in this case, they filed a motion to lift the receivership or vacate the receivership with respect to what I'll call the on-point global corporate defendants. That motion is also pending before the district court, obviously much more recently filed. They also renewed their application to lift the asset freeze. So no action has been taken on that. My clients are unaffiliated with on-point global to the extent that they are outside investors. So my clients are Mr. Zangrillo and the Dragon Global group of companies. We haven't moved to lift the receivership because we sort of view the receivership of the on-point global entities as issues for their officers and executives to pursue and not for my clients to pursue. But we do believe that whether the relief comes from the district court or this court, it's imperative that the asset freeze and the receivership, but especially the asset freeze, given the irreparable harm that it is imposing and the lack of any authority for it, be vacated immediately. And so to go, Your Honor, to your question at the outset, what is left, I think the easy answer is nothing has to be left. The approach of this court could certainly be that the underlying order is unlawful in and vacate and remand for proceedings consistent with AMG Capital Management. And that's what, for example, the Ninth Circuit recently did in a case called FTC versus VPL Medical Incorporated. It's 846 Federal Appendix 561. And that, I believe, was decided sua sponte by the Ninth Circuit just days after AMG was decided. Because, and again, I can't emphasize this enough, no one disputes that the order on appeal was unlawful. No one disputes that the key features of the order on appeal, the asset freeze and the receivership cannot survive AMG Capital Management. And so every day, literally every day that these companies operate in receivership, but especially that the individuals are suffering under this asset freeze is working an irreparable and unlawful injury. And, you know, in the case that I just cited, VPL Medical on remand, the district court even made the FTC liable for certain post-AMG fees incurred by the receivership. Those issues are not before the panel, but the point is everyone recognizes now that there is no authority for what the FTC has done and there is no justification for the asset freeze, the receivership, and the order on appeal persistent. Now, to the extent that you, I don't want to put words in your mouth, but you are requesting vacator of the injunction and all of its aspects and remand for reconsideration of the issues that the FTC has pressed in light of AMG. I think that's correct, Your Honor, and I anticipate that the FTC will want to defend certain aspects of the order on appeal, whether here or below, that are truly injunctive, that, for example, enjoin the practices that they sued upon. And obviously, we— What—and I know there was a joint brief file, but what aspects of the injunction were not challenged on appeal initially? I don't think there was any aspect that was not challenged on appeal. So, as far as my clients are concerned, we raised principally three arguments putting aside the Sixth Amendment issue, which has been resolved. First is the lawfulness of the remedies, which, again, is undisputed. Second, and this infects the entire order on appeal, is that it failed to contain sufficient fact-finding under Civil Rule 52 to allow for effective appellate review. And if you look at— With regard to the, for example, to the connection of certain defendants to the alleged scheme and the money trail, et cetera. So that's principally my client's issue. I think that we could talk about whether the fact-finding was sufficient as to whether the websites themselves were deceptive. But putting that aside for a second, neither the district court's oral order nor its written order made any differentiation or attempted to discuss separately any of the corporate or individual defendants. And again, that's particularly impactful with respect to my clients who operated independently of En Pointe Global. So they had their own websites branded Dragon Global. They ran a different business that had to do with a lot of things other than En Pointe Global. They're venture capital, private equity, and real estate investors. This is one of their investments. And I appreciate the FTC's argument that their involvement as venture capital investors make them liable here. But the district court made no such findings. The district court only, with respect to anything other than the websites, recited the legal standard in its oral order. The written order doesn't make any mention of any findings with respect to the individual defendants or the non-En Pointe Global corporate defendants. And the oral order, it's literally two sentences long, and it tracks the relevant, or more or less tracks the relevant legal standard. But there's absolutely no fact finding. And so under Rule 52 and this court's precedence, that fact finding is insufficient for appellate review. And then the next layer down, of course, is that the facts themselves were insufficient to hold my clients liable. And we can talk about that for hours, but the simplest example of this is there's absolutely no evidence that my clients, Mr. Zangrillo and the Dragon entities, had any knowledge of the allegedly deceptive practices. And if you look at the FTC's brief, they set out over two pages at, I think it's pages 29 and 30 of their brief, their evidence of knowledge with respect to the defendants. And they cite things that sound pretty bad. There are letters from state attorney generals. There are complaints from consumers. There is people creating fake customer reviews. If you look at the record sites, though, none of those things have anything to do with my clients. My clients are not aware of any of those things, and my clients are not insiders at the company. So they're not executives. They're not there day to day. And the undisputed record evidence, including from the CFO of the company, is that my client had no day to day responsibilities and was not there day to day because he was not an employee. He was not an executive. And so if we get that far, there's absolutely no factual basis for the court's order. Okay. We've taken you a little bit beyond your time. You've saved your five minutes for rebuttal, Mr. Shorts. Thank you. Mr. Grossman. Your Honor, may it please the court. My name is Brad Grossman. I'm for the Federal Trade Commission, and I'll echo Mr. Schwartz's remark that it's a privilege to be back in a courtroom again. This case presents just one live question for review. Whether the district court abused its discretion by enjoining Mr. Zangrillo and Dragon Global from misleading consumers and exploiting their personal data pending trial. The district court did not commit clear error when it found that the FTC was likely to prove that Mr. Zangrillo had the authority to control Enpointe Global and that Dragon Global was part of a common enterprise. Mr. Zangrillo was one of Enpointe's top two shareholders, and he was chairman of the board of managers. Before you get into that merits argument, could you tell me, Mr. Grossman, what it is that you think goes out the window under AMG? We have to reverse in part. You agree? Yes. Section 13B of the FTC Act does not authorize an asset freeze. There's simply a question of timing in this case in that we've had a motion pending before the district court since April 30th to hold several of the defendants in this case, including Mr. Zangrillo, in contempt and to freeze their assets in order to preserve them for a compensatory contempt remedy. And the problem is, Your Honors, conceding, of course. There is not a statutory basis for the current asset freeze. But if the court vacates the asset freeze today and the district court grants the TRO and imposes an asset freeze two weeks from now, the money to compensate consumers for a contumacious $85 million fraud could be lost forever. And that's the problem. But you're assuming there can be contempt of an order that was void ab initio to begin with. Pardon me? If the asset freeze was void from the beginning because there was no statutory authority for it, how can you be in contempt for violating it? I'm talking about the related case. So there was the FTC v. Equinity case. Burton Katz was subject to a cease and desist order against deceptive cover. We don't have those defendants before us. I completely understand. My point is, in that related case, which is also pending before Judge Scola, we've had a motion pending since April to impose an asset freeze to preserve them for a compensatory contempt remedy, which our understanding is a district court has inherent equitable authority to impose, even if the underlying statute, meaning Section 13B, does not provide the same sort of relief on the merits. And we're not suggesting that this court litigate the merits of our pending motion that's been pending since April. It's just that we think that the district court ought to have the opportunity to pass upon that motion. If there's no statute, and then I'll let you get back to your merits argument. If there's no statutory basis for an asset freeze, what's the statutory basis for a receivership? So there is a, that's a question that after the majority of the defendants voluntarily dismissed their appeal, they brought it to the district court and it's yet to be briefed. But we submit, Your Honors, that there is a But they're asking for that to be set aside on appeal. Mr. Zangrillo is contesting the monetary aspects of the receivership. There are other functions, conceivable functions of a receivership, such as to prevent an ongoing fraud that's occurring. And there are some authorities, and I'd be happy to follow up with them in a letter if this court so requests it, that suggests that in cases You can appoint a receiver just to prevent future violations of the law? If there's an active fraud that, and a district court were to determine that pending trial, the defendants were actively in the process of deceiving consumers and stealing their money and a mere injunctive provision alone would not be sufficient, we submit that there is a potential basis. Wouldn't that be functionally equivalent of an asset freeze? The receivership asset. It could be a different sort of, and it perhaps might not even be a receivership, it could be a monitorship, for example, where the court appoints somebody to exercise some level of supervisory power over the company, for example, to make sure that the company is not continuing to operate websites that are actively deceiving consumers and actively stealing their money and actively continuing to collect money from consumers for fraudulent activity. And I submit that this may be a question of first impression under the FTC Act. Usually most statutes that authorize, that provide a cause of action for fraud will allow the plaintiff to collect money at the end of the case. Here we have statutory authority to combat fraud, but no longer statutory authority to obtain money at the end of the case. Why shouldn't we allow, if that's what you're ultimately seeking, why not just let the district court figure that out from the very first instance and make additional factual findings if it needs to, to justify the relief you're now requesting? Judge Jordan, that's precisely what we're asking this court to do. Mr. Zangrillo's brief does not challenge the aspects of the receivership independent of the asset freeze. So Judge Scola's order imposes, enumerates several pages of duties of the receiver and several of them are separable from the asset freeze. And how are we supposed to figure out what's separable and not after AMG? Well, there's a jurisdictional question. So the companies that are actually subject to the non-monetary aspects of the receivership voluntarily dismissed their appeal last week and went immediately to the district court with a motion to vacate the receivership. And then that's a question our responsive brief has not defined. Do you want us to rewrite at the appellate level the receivership aspect? Absolutely not, Your Honor. Absolutely not. That would be inappropriate. I completely wholeheartedly agree that that would be inappropriate. That's a question that's now pending before the district court for the first time. Mr. Zangrillo's brief here doesn't, for example, argue that a receiver would be inappropriate for non-monetary purposes, such as to prevent a company from actively defrauding consumers. So we think that this is a question that's within the district court's wheelhouse. The receivership entities, the businesses that administered these websites, collected money from consumers on a fraudulent basis, are now subject to the exclusive jurisdiction of the district court because they voluntarily dismissed their appeal and those defendants decided that it would be a more fruitful basis for relief, to seek that relief from the district court rather than the court of appeals. So we would encourage this court to let that process play out in the district court. The district court can find facts. The district court can balance the equities. And I believe that there are some authorities suggesting that a district court could have inherent authority not to impose the exact same type of receivership that exists here, but to appoint some type of receiver to make sure that consumers are not being defrauded pending trial. So you want us to leave the receivership largely intact? While the process plays out in district court. Because the motion, the defendants brought that issue to the district court for the first time last week. I know, but they've also challenged a good portion of the receivership in terms of its financial aspect here on appeal. Right, the financial aspects here on appeal. Those are a fair amount of them. Right, so in a court's order in this case, I wouldn't purport to tell this court how to handle it procedurally. That's within the discretion of the court. But if there were some instructions to vacate the monetary portions of the asset freeze while assessing the merits of the non-monetary portions of the asset freeze and rebalancing the equities and determining whether a receivership is necessary under those circumstances, I would suggest that that's the fair and proper result in this case. If I may touch upon the merits of the single remaining issue on appeal, Your Honors, I'd appreciate that opportunity. So the question here is, the single live question is whether the district court properly issued a cease and desist order against Mr. Zangrillo and the Dragon Global Companies based upon Mr. Zangrillo's authority to control and based upon the Dragon Global Companies' participation in the common enterprise. And as I was saying before, Mr. Zangrillo was chairman of the company, and the company's governing documents explicitly gave him full and complete authority to control the company. So I submit that whatever question there is about the specificity of the district court's findings of fact, the issue regarding Mr. Zangrillo's authority to control is simple, straightforward, and undisputed. And then Mr. Zangrillo touting his role as chairman of the company then raised tens of millions of dollars from investors, calling these websites a multi-billion dollar opportunity based largely on the websites that are at issue in this case. And as for the corporate entities, Dragon Global, the same three individuals who were running Dragon Global, who were the members of its venture team, Mr. Zangrillo, Burton Katz, and Bob Belak, happened to be the CEO, the CFO, and the chairman of OnPoint Global. And we submit that that's more than enough evidence to justify a cease and desist order preventing Mr. Zangrillo and preventing the companies from deceiving consumers pending trial. What's your response to Mr. Schwartz's argument about the insufficiency of the district court's findings? Right. So one of the responses that I mentioned was that this is a very simple, straightforward question. That the authority to control at a minimum is a straightforward question. And if Mr. Zangrillo is bound by the order in this case, then the corporate entities almost automatically will under Rule 65 because they're acting in concert and participation with him. The other response I'd have is that under Rule 52A, it's not a jurisdictional bar. And the question in this case is whether or not the factual findings that the district court provided allow this court to understand the district court's findings and provide a meaningful basis for appellate review. Well, but did the district court say anything orally or in writing about these appellants individually or lumped them all together? The district court did in fact say something about these appellants individually. At the beginning of the preliminary injunction hearing on day one, the district court held a hearing specifically on Mr. Zangrillo and the Dragon Global Entities' motion to vacate the TRO. And the argument that Mr. Schwartz made in that case was that there was insufficient evidence linking Mr. Zangrillo and the Dragon Global Entities to the scheme. So at page 21 of the day one transcript, Judge Scola did render findings of fact specific to Mr. Zangrillo and specific to the Dragon Global Entities, finding that Mr. Zangrillo had the authority to control the companies, had knowledge of wrongdoing, and that the Dragon Global Entities were participants in the common enterprise. So there were those specific findings of fact. And then at the end, the district court found again that the defendants had, that the individual defendants had authority to control and that the corporate defendants were part of the common enterprise. I'd like to raise one other point that I think is relevant to the existence of a cease and desist order, Your Honors, which is that in the prior precedents where this court has considered questions of individual liability, the court has required a showing of knowledge because the FTC sought monetary relief. But in this case right now, because the live issue is simply a cease and desist order, Mr. Zangrillo's authority to control is sufficient to justify the cease and desist order. And in our... That's not the way the case was litigated below. You're asking us to sort of reimagine and remorph all the issues because of an intervening Supreme Court case. There was an intervening Supreme, well, we contended that there was authority to control, Your Honor, because we were seeking monetary relief. There's been decades of precedents since the 1940s establishing that when the FTC seeks only a cease and desist order, the FTC Act is a strict liability statute for purposes of determining whether somebody engaged in deceptive conduct. When it acts administratively? When it acts administratively, but we cite it in our 28J letter after AMG. If it decides to go to court, it's strict liability? If it decides to go to court only to seek injunctive relief, that's correct. There are decisions from the 10th Circuit, Free Comm Communications, which is cited in our 28J letter, making that point clearly, that when the FTC... You're asking us to touch upon a fair number of issues of first impression in a case that has completely changed since the appellate briefs were filed. Respectfully, I don't... While the 11th Circuit has not held that in particular, the courts of appeals, the Palm Wonderful case cites decisions going back to 1944, establishing that very principle, that the FTC Act for an individual simply to be enjoined from future misdeeds, knowledge is not a requirement. That was a judicial check on the FTC seeking monetary remedies without demonstrating that an individual had knowledge of wrongdoing. Okay, to your chagrin, let me go back to where I started. No problem. So, there are 25 numbered paragraphs, A through W, with regards to the powers of the receiver and the duties of the receiver. You want us to go through each one of those paragraphs and parse out exactly what is related to monetary issues and asset freezes and what is not? I would... So, for example, B, paragraph 12B, take exclusive custody, control, and possession of all assets and documents or in the possession of custody and control of any receivership entity. Does that stay or go? The asset component of it would go. Preserving evidence... What do you mean the asset component of it? Well, taking control of assets is an asset freeze and the FTC Act does not authorize monetary... But not documents, so we leave them. So, we have to redline these 25 paragraphs. I believe that the district court is the decision maker who is able to, in the first instance, make that determination. That it should be the district court... I agree, but the difference between you and your colleague is that you both agree on what should happen. It should go back to the district court to figure things out again. The big difference is he wants the injunction vacated while that happens. You want the injunction kept in place while that happens. You know... And for us to keep it... Since parts of the injunction are clearly invalid now in light of AMG, what you're asking us to do is to redline 25 paragraphs and figure out what is... Look at paragraph C. Take exclusive custody, control, and possession of all documents and assets associated with credits, debits, or charges made on behalf of any receivership entity wherever situated. Does that stay or does that go? If it's incidental, if it's a portion of the... If it flows from the asset freeze, it has to go. That's not my question to you. My question to you is, as written, does C stay or go? I think it would have to go because it's primarily about assets. But there are others... Primarily about assets, but that's not what you said before. It looks to me from a quick review that it is about assets, so I'm inclined to say that it would have to go. But there are other provisions about protecting consumers from fraud that we suggest there is a conceivable legal basis for the district court to impose on them. Last one. E, investigate any claims a receiver may have on behalf of the receivership against third parties, but here's the caveat, including but not limited to claims seeking imposition of constructive trust, disgorgement of profits, recovery and or avoidance of fraudulent transfers and claims in contract law toward an equity. Does that stay or go? That looks like it would have to go because it would be a provision that's seeking to obtain assets for the receivership. You're asking us to do a lot without a refined factual record. I speak only for myself, not for my colleagues. I hear you, Your Honors. The only thing I would say is that the receiver is actively engaged in the process of making sure these websites are not actively deceiving consumers. She proposed revisions to those websites that have been approved by the district court and it could be disruptive if the receivership were immediately vacated only to be imposed again if the district court determined upon resolving the motion that the equity supported it. But I certainly understand and take your Honor's point. Okay, Mr. Grossman. Thank you very much. Okay, thank you. We appreciate the help. Mr. Schwartz. Thank you, Your Honor. So what do you do about his point that there were certain aspects of, as difficult as it may be for us, there were certain aspects of the injunction and the receivership that you did not directly challenge on appeal, putting aside the challenge to the inadequacy of factual findings? Well, I'm not sure you can put that aside. Well, no. What I'm saying is that flows from what you think is an evidentiary failing on the part of the district court. That doesn't flow from AMG. No, that's certainly true. Right? That's right. And so, insofar as AMG is concerned, what aspects, what do you say about Mr. Grossman's argument that there were certain aspects of the receivership that were not challenged on appeal except for sufficiency of the evidence, which I know is a big thing. I'm not trying to minimize it. But were not challenged on the AMG type grounds. Right. So, to be clear, right, we have challenged both on sufficiency and on the Rule 52 basis the entire thing. But if we want to look at just the AMG issues, I agree with you. Post-AMG, district court can impose purely injunctive relief under the FTC Act. The receivership provisions are not, none of them are purely injunctive. And just stepping back from an attempt to line edit the district court's order, the concept of receivership, to Judge Schoflat's point, is to take over a company. You cannot take over a company and yet say, but you have nothing to do with its assets. It does not make sense. Whether something like a monitor or a special master or some neutral could be put in place to ensure the company's compliance with the injunctive aspects of an order, that's, I mean, I think it's a question of first impression, but it's not any part of the order on appeal. Let me just make one other practical point, which is I'm only here for my clients. My clients never, ever, never, and I think my colleague will agree with this, hosted any of the websites that the district court said were misleading or that the FTC asserted were misleading. So if the order is vacated in its entirety as to my clients, the only one whose appeals are live, it will not affect any of the interests that Mr. Grossman was talking about because for whatever reason, the entities that were hosting all of these websites dismissed their appeal and so those issues are before the district court. You know, certainly the implications of my argument would be identical for them, but as a jurisdictional matter, I'm here only for my clients and my clients are not implicated by any of these issues. My clients are outside investors. They don't host any of these websites. The only things that they possess are investments in OnPoint Global and investments in totally unrelated entities. And so none of these issues are implicated. And so I would suggest that with respect to my clients as a practical matter, the order can be vacated in its entirety, remanded to the district court so that it can consider these issues, make appropriate fact finding. You know, I submit that it won't be able to do that, but make appropriate fact finding and enter any order that is appropriate and we can go from there. There's really, as a practical matter, no need to engage in this discussion. Let me say also, and I appreciate it is an issue of first impression that this court is not likely to delve into, but the kind of receivership that my friend is suggesting should persist, I'm not aware of it having any precedent. The only instances where I'm aware of a court imposing a receiver where money was not at issue at all is in government cases where civil rights violations are at issue and a receiver is necessary to remedy ongoing violations of civil rights. And there's an excellent discussion of this in the Fifth Circuit. Counsel, my concern about receiverships as an equitable remedy is it'd be impossible to enforce it in a show cause order. Under, yeah, Rule 65 would require specific injunctive provisions against somebody in order to enforce it. That's my problem with the receivership idea. I think that's right. And so on remand, the district court could craft a new order or... The district court is bound by Rule 65. You agree? Of course. Yeah. And it tells the district judge how to go about doing it. That's right. That's right. I'm not arguing against you. I'm just saying that that's the problem with having a receivership, as it were, versus an injunction with issued pursuant to Rule 65. I agree with you entirely, and that's what I was saying. You know, I think if you look at the case law on receivership, and I was going to point honors to Netsphere against Barron, which I think is recognized as the leading case on this point. It's 703 F-296 out of the Fifth Circuit. It really discusses the purpose of receivership and how it cannot be separated from control of assets and when there is not a claim against assets. And so a kind of appropriate order that a district court could craft under Rule 65 post-AMG is, in our view, limited to purely injunctive relief. And as I said, whether there could be a different concept of some third-party oversight is a distinct question of whether any part of this order can survive. It is common ground. This order must fall, and I would respectfully request that your honors enter that order vacating the asset freeze and vacating the injunction in its entirety as quickly as practical because it has no basis in law and it is imposing an ongoing and tremendous hardship on my clients, again, who are not implicated in the issues that my client, my colleague raised. All right. Thank you both very much. Thank you. Thank you. Don't be shy. Come on up. Take your time to get situated and set up. Our next case is number 20.